# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| vs. | |
| | CASE NUMBER: 8:06-m- |
| LEON ERICK WILLIAMS, JAMES LONG, and ERNEST KING | 8:06-M 1061 TBM |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. Beginning on or about January 12, 2006 up to and including on or about February 2, 2006, in Hillsborough County, in the Middle District of Florida, defendant(s) did,

> Conspiracy to possess with the intent to distribute 5 or more kilograms of cocaine, being a felon in possession of a firearm and possessing a firearm in furtherance of a drug trafficking crime

in violation of Title 18, United States Code, Sections 922(g)(1) and 924(c) and Title 21, United States Code, Section 846. I further state that I am a Special Agent with ATF, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Signature of Complainant
Christopher Felski

Sworn to before me and subscribed in my presence,

February 2, 2006         at         Tampa, Florida

THOMAS B. MCCOUN, III
United States Magistrate Judge
Name & Title of Judicial Officer                       Signature of Judicial Officer

I, Christopher Felski, being duly sworn, depose and state:

1.  I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since September 9, 2001. Currently, I am assigned to the Tampa III Field Office, which is located in Tampa, Florida. I have learned the following information in my official capacity by first hand observations, interviews and/or having received the information from other law enforcement officers.

2.  The following information is not all the information known to me regarding this investigation, rather it is only information to establish probable cause for the arrest of Leon WILLIAMS, James LONG, and Ernest KING for conspiracy to possess with intent to distribute 5 or more kilograms of cocaine in violation of 21 U.S.C. § 846, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) and possess a firearm while being a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

3.  On January 12, 2006 Special Agent (SA) Richard Zayas was introduced to Leon WILLIAMS and James LONG by a confidential informant at an ATF controlled undercover apartment located in Tampa, Florida. SA Zayas explained to WILLIAMS and LONG that he was a courier of kilograms of cocaine for a Colombian narcotic organization. SA Zayas stated that when travels to collect the cocaine, five (5) to six (6) kilograms, two (2) individuals are present, one of which is armed with a firearm. SA

Zayas further stated that the armed individual stays with him while the second person travels to a rear bedroom to provide him the cocaine for transportation. While waiting to collect the cocaine, SA Zayas explained that he observes between twenty two (22) to thirty nine (39) kilograms of cocaine in the living room area of the "stash house". WILLIAMS and LONG questioned SA Zayas as to the location of the "stash house" and the number of individuals present in the house. SA Zayas questioned WILLIAMS and LONG if they desired to execute an armed robbery of the cocaine. Both subjects responded in the affirmative. SA Zayas also questioned WILLIAMS and the LONG if they were experienced in this type of criminal activity. WILLIAMS responded "hell yes" and LONG replied "I'll kill them if you want me to". LONG continued to state that he would "kill" the occupants of the "stash house". SA Zayas advised WILLIAMS and LONG that the confidential informant could not participate in the armed robbery due to the fact that he had previously met one (1) of the alleged Colombian traffickers. SA Zayas stated that the cocaine would be present at the beginning of the following month, February 2006. WILLIAMS began to formulate a plan for the armed robbery. SA Zayas, WILLIAMS and LONG agreed to split the proceeds of the robbery, kilograms of cocaine, evenly. Prior to concluding the conversation, SA Zayas, WILLIAMS, and LONG arranged to meet at the end of the month, January 2006, to further discuss the impending armed robbery of kilograms of cocaine.

4.  On January 30, 2006 Special Agent SA Richard Zayas met with an ATF confidential informant, WILLIAMS and LONG at an ATF controlled undercover apartment in Tampa, Florida. SA Zayas advised WILLIAMS and LONG that the cocaine

would be in the Tampa area on Thursday, February 2, 2006. SA Zayas further advised that he was to be contacted on Wednesday, February 1, 2006, by his alleged narcotic associates with additional details concerning the time and place the alleged cocaine would be present. SA Zayas arranged with WILLIAMS and LONG to meet Wednesday evening to further discuss the impending armed robbery. SA Zayas stated he anticipated twenty two (22) to thirty nine (39) kilograms of cocaine in the alleged stash house. SA Zayas explained that he was not sure if additional individuals would be present in the location. WILLLIAMS advised that he would have someone come from the rear of the residence and from the front of the residence during the robbery. SA Zayas continuously questioned WILLIAMS and LONG if they desired to execute the armed robbery. WILLIAMS and LONG responded in the affirmative. WILLIAMS and LONG questioned SA Zayas concerning the type of residences utilized in the past as stash houses. WILLIAMS began to formulate a plan as to how the robbery would be executed. LONG stated "I got another man I'm going to bring". During the course of the conversation, WILLIAMS stated "I'm going into that bitch shooting first man, fuck it". LONG added "we're going to shoot first". SA Zayas advised WILLIAMS and LONG that the confidential informant would not be participating in the armed robbery. WILLIAMS stated that he was "leaving Florida" upon the completion of the robbery. SA Zayas impressed upon WILLIAMS and LONG the seriousness of the impending criminal act.

5.    On February 1, 2006 SA Richard Zayas met with WILLIAMS, LONG, Ernest KING, and an ATF confidential informant at an ATF controlled undercover apartment in

Tampa, Florida. SA Zayas explained to all the subjects that his source had contacted him and advised that the cocaine would be ready to be collected between 11:15 AM and 11:30 AM. SA Zayas further explained the area in which the alleged stash house would be located. SA Zayas advised of the manner in which he collected between five (5) to six (6) kilograms of cocaine from the stash house location. SA Zayas also advised that two (2) individuals would be present in the location, one (1) of which was armed with a firearm, and approximately twenty two (22) to thirty nine (39) kilograms of additional cocaine. WILLIAMS questioned SA Zayas as to the area in which the stash house was located. SA Zayas replied that the stash house was in a typical neighborhood during day light hours. SA Zayas explained the seriousness of the anticipated crime. LONG questioned SA Zayas concerning the occupants of the stash house. SA Zayas questioned the subjects, on several occasions, if they were interested in executing the armed robbery. The subjects answered in the affirmative. SA Zayas observed KING nodding his head in agreement. SA Zayas and the confidential informant discussed a location to meet the following morning. SA Zayas arranged to meet all the participants and the confidential informant at a hotel parking lot located at the intersection of Church Street and W Hillsborough Avenue, Tampa, Florida, at 11:00 AM. SA Zayas discussed splitting the proceeds, kilograms of cocaine, evenly among all the participants of the robbery. WILLIAMS advised that the occupants of the stash house would not be exiting the location after SA Zayas. WILLIAMS stated they were going to "duct tape" the occupants and were taking "everything out of there, we ain't leaving a crumb". SA Zayas observed WILLIAMS question KING as to his desire to execute the robbery. KING advised "if this is for sure, this ain't about bullshit". SA Zayas assured KING that the information he

was providing was factual. WILLIAMS questioned SA Zayas concerning the number of cars that would be present at the stash house. During the conversation, WILLIAMS and LONG began to formulate a plan in order to execute the armed robbery. SA Zayas was told by LONG that he would be advised of the plan the following day, February 2, 2006.

6. On February 2, 2006 Special Agent (SA) Richard Zayas met with WILLIAMS, KING, LONG and an ATF confidential informant in the parking lot of the Microtel Inn and Suites, 5405 North Church Street, Tampa, Florida. Upon arriving, SA Zayas traveled to the front driver's window of the vehicle containing the above mentioned individuals. SA Zayas moved his head into a position in which he could observe the ATF confidential informant sitting in the driver's seat, WILLIAMS sitting in the front passenger seat, KING sitting behind the front driver's seat and LONG sitting behind the front passenger seat. SA Zayas explained that his source would be contacting him between 11:15 AM and 11:30 AM with the address of the alleged stash house. LONG questioned SA Zayas concerning where the stash house was anticipated to be located. KING questioned SA Zayas as to the configuration of the inside of the stash house. SA Zayas, on several occasions, asked the subjects if they wished to continue with the robbery. In each instance SA Zayas was assured by all participants that they wished to continue with the armed robbery. SA Zayas advised the subjects that he had a mini storage unit nearby in which he wished for the individuals to place his portion of the proceeds, kilograms of cocaine, from the robbery. All the individuals agreed to follow SA Zayas to this location.

7. SA Zayas, followed by the vehicle containing all the subjects and the ATF

confidential informant, traveled to Discount Mini-Storage, 4105 West Hillsborough Avenue, Tampa, Florida. Upon arriving at the location, SA Zayas exited the vehicle and walked to the vehicle containing the subjects and the ATF confidential informant. All the individuals exited the vehicle and walked in the direction of a storage unit SA Zayas was indicating as his rented unit. SA Zayas stated "this is going to be a monster pay off, brother". WILLIAMS responded "hey listen, you know it's sweet, huh, you know it's sweet". SA Zayas replied "we'll split it up even, man". LONG advised "yeah, all the way". SA Zayas then stated he was getting paged by his source and departed the area to place a telephone call. At this time, members of the ATF Special Response Team initiated the arrest of all subjects. Four firearms and an electric stun device (Taser) were located on or about the subjects. LONG and KING each had a loaded firearm on their person. Two other firearms were located within the vehicle occupied by the defendants and within reach of all defendants.

8. A criminal history search of Leon WILLIAMS (FBI#462794AB7) revealed that WILLIAMS has felony convictions to include Delivery of Marijuana in Pinellas County, FL (#9922758), Fleeing and Eluding Law Enforcement in Pinellas County, FL (# 0021367), and Burglary of an Occupied Dwelling in Pinellas County, FL (#0203662).

9. A criminal search of Ernest KING (FBI#750998TA5) revealed that KING has felony convictions to include Robbery with a Firearm in Alachua County, FL (#9601441) and Fleeing and Eluding Law Enforcement in Pinellas County, FL (#0421792). KING is currently on Florida Department of Corrections, supervised release for the robbery.

10. A criminal search of James LONG (FBI#557821AB3) revealed that LONG has felony convictions to include Burglary in Pinellas County, FL (#9616827), Cocaine Delivery in Pinellas County, FL (#9801470), and Fleeing and Eluding Law Enforcement in Pinellas County, FL (#032579). LONG is currently on Florida Department of Corrections, supervised release for the fleeing and eluding.

Your affiant respectively submits that there is probable cause to believe that Leon WILLIAMS, Ernest KING and James LONG committed the offenses of Title 18, United States Code, Section 924(c) and Title 21, United States Code, Section 841(a)(1) and 846.

Respectfully Submitted,

Christopher Felski
Special Agent
Bureau of ATF

Subscribed and sworn before me in Tampa, Florida this 2rd day of February, 2006.

THOMAS B. MCCOUN

UNITED STATES MAGISTRATE JUDGE